RICHARD E. QUINTILONE II (SBN 200995)
GEORGE A. ALOUPAS (SBN 313112)
**QUINTILONE & ASSOCIATES**
22974 EL TORO ROAD, SUITE 100
LAKE FOREST, CA 92630
TELEPHONE: (949) 458-9675
FACSIMILE:  (949) 458-9679
E-MAIL: REQ@QUINTLAW.COM; GAA@QUINTLAW.COM

Attorneys for Plaintiff, BRENNA MILMAN on behalf of herself and on behalf of a Class of all other persons similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNA MILMAN, on behalf of herself and on behalf of a Class of all other persons similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>FCA U.S., LLC, a Delaware Limited Liability Company; and DOES 1 through 100, Inclusive,<br><br>    Defendant. | **Case No.:**<br>**CLASS ACTION**<br>**Assigned For All Purposes To:**<br>**Dept.:**<br>**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR:**<br>1. **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT;**<br>2. **BREACH OF EXPRESS WARRANTY;**<br>3. **BREACH OF THE IMPLIED WARRANTY OF MERCAHNTABILITY;**<br>4. **DECLARATORY RELIEF;**<br>5. **UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 ET SEQ.;**<br>6. **VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT CIVIL CODE § 1750, ET SEQ.;**<br>7. **VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT CIVIL CODE § 1791.2 & 1793.2;**<br>8. **VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT CIVIL CODE § 1791.1 & 1792;**<br>9. **BREACH OF EXPRESS WARRANTY;**<br>10. **BREACH OF IMPLIED WARRANTY; and**<br>11. **FRAUD/FRAUDULENT CONCEALMENT.**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

All allegations in this Class Action Complaint are based upon information and belief except for those allegations which pertain to the Plaintiff and her counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after discovery. Plaintiff BRENNA MILMAN, on behalf of herself and all others similarly situated, complains of Defendant and for causes of action alleges:

# I.   INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff on behalf of herself and a class of current and former owners and lessees of Jeep vehicles containing soy-and/or bio-based wiring insulation, wiring coatings, and/or other parts and components (the "Class Vehicles" ). Plaintiff seeks redress on behalf of Plaintiff and the class(es) defined herein for damage resulting from the inclusion of bio-or-soy-based materials Class Vehicle wiring or wiring systems.

2.      Upon information and belief, Jeep incorporates soy-or-bio-based ingredients in the wiring in Class Vehicle electrical wiring systems (as well as other parts of the Class Vehicles) that baits rodents – including rats, squirrels, and other animals – to the vehicles and that entices these pests to chew through, eat, or otherwise damage and compromise the wiring (the "Defect"). Indeed, consumers (including Plaintiff) have been informed by various Jeep dealerships and service stations that rodent damage to Class Vehicles relating to the Defect is a common problem experienced by consumers.

3.      The Defect causes damage to the Class Vehicles' electrical and other operational systems and/or these systems cease to function, leaving the vehicles partially or completely inoperable.

4.      The accounts by Jeep service representatives are consistent with the numerous complaints posted on the National Highway Traffic Safety Administration ("NHTSA") website and other consumer resources which reveal that rodents and pests are uniquely attracted to the Defect in the Class Vehicles.

5.      The soy-or-bio-based parts are purportedly more environmentally-friendly and less expensive than traditional wiring and other parts and components. However, current

CLASS ACTION COMPLAINT

and former Class Vehicle owners and lessees should not be required to bear the costs associated with the Defect, nor should they be required to bear the risk of future out-of-warranty problems for animal-damaged wiring that results simply because Jeep made a cost-conscious decision to include cheaper bio-based or soy-based materials in Class Vehicles.

6.    Despite the fact that Jeep is aware (or should be aware) of the Defect and that resulting rodent or other animal damage is a widespread problem in Class Vehicles across the United States, Jeep has failed to disclose the Defect to Class Vehicle purchasers and lessees, and routinely refuses to repair the Class Vehicles under its Basic Warranty (the "Warranty") that it issues with each Class Vehicle purchase or lease.

7.    Worse still, when Jeep repairs Defect-related damage at the expense of Class members, it simply incorporates new defective bio-or-soy-based wiring parts or components, exposing Class Vehicles to the risk and likelihood of future rodent or animal damage which will necessitate additional repairs, all to be paid for by Class members.

8.    As if this is not bad enough, when Class members bring their Class Vehicles to Jeep's authorized dealers and/or service stations for Defect-related repairs, Jeep tells Class Members that it will be able to repair the wiring that was damaged by rodents, but that Jeep is not responsible for the costs of such repair.  As such, Jeep refuses to reimburse Class Members for its own design defects to the Class Vehicles.

9.    As a result of the Defect and the monetary costs associated with repairs, as well as other out-of-pocket losses and diminished Class Vehicle values, Plaintiff and Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Jeep's conduct.

10.    As set forth below, Plaintiff seeks redress for Jeep's violations of various state consumer protection and state and federal warranty laws. Plaintiff also seeks recovery for monetary and equitable relief for Jeep's failure to implement or honor the terms of its Warranty, breaches of implied warranties, unjust enrichment, restitution, fraud/fraudulent concealment, and declaratory relief.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding **$5,000,000.00** exclusive of interest and costs; and (iii) because at least one plaintiff and defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Jeep transacts business in this district, and is subject to personal jurisdiction in this district. Additionally, Jeep has advertised in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

13.     This Court has personal jurisdiction over Jeep because it has conducted substantial business in this judicial district and intentionally and purposefully placed Class Vehicles into the stream of commerce within this district and throughout the United States.

II.    **PARTIES**

A.    **Plaintiff**

14.     Plaintiff BRENNA MILMAN at all relevant times was and is a natural person and a resident of the State of California, County of Orange.

15.     In **2017**, BRENNA MILMAN purchased a **2017** Jeep Wrangler, **VIN: 1C4BJWEGXHL685553** from Champion Dodge in Downey, California, which is an authorized Jeep dealer in California.

16.     Plaintiff BRENNA MILMAN uses her Class Vehicle for personal, family, and/or household use.

17.     In or about **September 19, 2017**, Plaintiff had a service appointment at a Courtesy Chrysler Dodge in San Juan Capistrano, California as Plaintiff noticed that her Class Vehicle was not operating properly.  It was discovered that the Class Vehicle was not

operating properly because rodents entered the engine compartment and chewed up the soy-based wires based on a design defect of the Class Vehicle. The costs of repairing the defect in Plaintiff's Class Vehicle was **$437.50**. On **September 26, 2017**, Plaintiff wrote a letter to both Champion Dodge where the Class Vehicle was purchased and to Courtesy Chrysler where the vehicle was being repaired, detailing the design defect and seeking reimbursement of the **$437.50**.

18.     On or about **October 6, 2017**, Plaintiff contacted Defendant directly by writing a letter to Defendant's Customer Care Department in Auburn Hills, Michigan in order to set up a claim. Plaintiff submitted her **September 26, 2017** correspondence originally to Champion Dodge and Courtesy Chrysler Dodge, to Defendant's Customer Care Department explaining the design defect of Plaintiff's Class Vehicle and requesting the **$437.50** reimbursement. To this date, Jeep has not responded to Plaintiff's claim.

19.     To date, Jeep has failed to remedy the Defect in Plaintiff's Class Vehicle or reimburse her for the rodent-related damage she paid to repair in her Class Vehicle and other out-of-pocket expenses.

20.     Plaintiff has suffered an ascertainable loss as a result of Jeep's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of her Class Vehicle.

21.     Neither Jeep nor any of its agents, dealers, or other representatives informed Plaintiff of the existence and prevalence of the Defect prior to her purchase.

22.     Had Plaintiff known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less than she did pay.

**B.     Defendant**

23.     Jeep is an automobile design, manufacturing, distribution, and/or service corporations doing business within the United States. Furthermore, Jeep designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles including the Class Vehicles.

-5-

CLASS ACTION COMPLAINT

24.     Defendant FAC U.S., LLC ("Jeep") is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan.  Jeep, through its various entities, designs, manufactures, markets, distributes and sells Jeep automobiles at numerous other locations across the United States.

25.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation of and decisions regarding the soy-covered or soy-/bio-based components and parts within the Class Vehicles were performed exclusively by Jeep.

26.     Jeep engages in continuous and substantial business in California. Defendant Jeep is headquartered in Auburn Hills, Michigan.

27.     Each of Defendant DOES 1 through 10 is the agent, servant, partner, joint-venturer, co-venturer, principal, director, officer, manager, employee or shareholder of one or more of its codefendants who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or more of its co-defendants in said codefendants performance of the acts and omissions described herein. Plaintiff sue each of these DOE Defendants by these fictitious names because Plaintiff does not know these Defendant's true names and capacities at this time.

28.     Plaintiff alleges that at all times mentioned herein, each Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of the other Defendants.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, the other Defendants.

## III.    FACTUAL BACKGROUND

### A.    The Defective Soy/Bio-Based Materials Within Class Vehicles

29.     Electrical wiring is ubiquitous in modern automobiles. A vehicle's electrical wiring connects the various critical, and non-critical, vehicle systems. The wire creates circuits that must stay intact in order for the vehicle to function as intended.

CLASS ACTION COMPLAINT

30.     Electrical systems in an automobile deliver and monitor electrical power to various devices and sensors in the vehicle. An automobile's electrical system is complex and is made up of many different components. The battery is the center of and powers the electrical system. The electrical system is made up of a web of connected wires, fuses, and relay systems. This wiring carries the current supplied by the car battery and directs it to various vehicle components. When an electrical component in an automobile is not working correctly, it is often caused by an open circuit, which can result from a broken or compromised wire or wire connection. When this occurs, vehicle functions that are imperative to safe vehicle operation – e.g. headlights, brake lights, windshield wipers, defrosters – may not work properly. This is because when electrical wiring is disconnected or is compromised, circuits are broken, causing systems to partially or completely fail.

31.     Historically, automobile wiring was coated or covered with glass, plastic or polymer-based insulation. However, over approximately the past decade, and especially in light of skyrocketing oil prices in the mid-to-late-2000s, there has been a dramatic downshifting in automotive manufacturing which has spurred automobile manufacturers to explore new materials to decrease cost and make more parts recyclable. As a result, upon information and belief, Jeep and other automobile manufacturers migrated from petroleum-based wire insulation to a plant, soy, or other bio-based automobiles parts because it became considerably less expensive and is purportedly more environmentally-friendly, as it is biodegradable.

32.     The use of these bio-based materials in automobile manufacturing was recognized in a **2012** investigation by the United States Department of Agriculture, which specifically identified that many automobile manufacturers use soy-or-bio-based materials in the manufacturing process.

33.     Wiring insulation is an imperative line of defense to protect the integrity of electrical wiring in automobile electrical systems.   But Jeep made the decision to incorporate in its wiring insulation and/or coatings (and other parts in Class Vehicles) soy-or-bio-based material – which invite, rather than protect against, electrical wiring issues and

concerns, as set forth herein – and it did so, not in the name of "going green", but rather in the name of profit and cost-cutting.

34.     Irrespective of Jeep's business justifications, the transition to soy-or-bio-based wiring parts and other parts has created a bed and breakfast for rodents and other animals and pests under the hoods of Class Vehicles at the expense of Class Members. Rodents and other animals are attracted to the soy-and-bio-based materials in Class Vehicles, whether it is in the electrical wiring and wiring parts, seat cushion foam, air filters, or elsewhere in the Class Vehicles.

35.     The inclusion of these materials, especially in Class Vehicle electrical wiring and wiring components, attracts rodents and other wild animals that nest under the hoods of Class Vehicles and feast on the wires, thereby compromising the integrity of Class Vehicle electrical systems and rendering Class Vehicles fully or partially inoperable. Automobile electrical wiring does not have to be entirely chewed through to jeopardize the functionality of the wiring system: rather, mere exposure of the wires can make a vehicle unfit for use.

36.     The safety concerns raised by wiring damage and failures in automobile electrical systems are obvious, and Jeep's continued use of soy-or-bio-based materials, including wiring insulation and/or wiring coatings, poses a legitimate threat to the safety of Plaintiff, Class members, prospective purchasers or lessees of Class Vehicles, and other drivers on the road.

37.     As the image above makes clear, soy-or-bio-based wiring is not suitable for its intended purpose – to protect vehicle wiring and circuitry in order to keep vehicles operational and safe.

38.     Regardless of the precise composition of the materials used in Class Vehicle wiring or wiring insulation, under the circumstances alleged herein – where numerous consumers are routinely experiencing significant rodent/animal damage to relatively new Class Vehicles through no fault of their own – Jeep should (a) disclose this issue to prospective purchasers and lessees; (b) should not be excluding repairs for rodent/animal related damage from coverage under the terms of Jeep's Warranty; and (c) Jeep should be

-8-

CLASS ACTION COMPLAINT

taking appropriate measures to modify the areas surrounding the wires in such a way to prevent the ongoing intrusion from rodents (such as, for example, incorporating rodent-deterrent materials, coatings, devices, meshes, etc.).

**B.    Defendant's Knowledge of the Defect**

39.    Jeep was aware or should have been aware of the Defect in Class Vehicles through (1) its own records of customers' complaints; (2) dealership repair records; (3) NHTSA records; (4) warranty and post-warranty claims; (5) internal durability testing; and (6) other various sources. Despite its knowledge, Jeep failed to notify consumers of the nature and extent of the Defect and/or provide any adequate remedy under the Warranty.

40.    Jeep is also aware or should have been aware of the Defect, because its agents, dealers, or other representatives routinely and consistently refuse to provide Warranty coverage for damage to Class Vehicles resulting from the Defect. Instead, Jeep, through its agents, dealers, or other representatives, compels consumers to either pay for repairs out-of-pocket or to make an insurance claim and pay an expensive deductible.

41.    Furthermore, the defective nature of the wiring has been widely publicized and known within the automotive industry generally and to Jeep specifically.

42.    A number of news stations across the United States have done consumer interest stories on soy or bio-based wiring in automobiles, reporting on how the inclusion of these materials or ingredients in automobiles attracts pests that cause extensive damage. One news media outlet that claims to be leading a nationwide investigation into this very issue reports (among other findings) the following: "Many new vehicles now use wiring that has a soy-based coating, which is better for the environment and cheaper to make than the traditional kind. But apparently, rodents love to gnaw on it, which can cause major electrical problems."

43.    Consumer media websites have also tracked the propensity of soy-/bio-based wiring insulation and coatings to attract animals and result in damage.   Honda – one of Jeep's primary competitors – is supposedly "convinced" that there is a problem with its own

CLASS ACTION COMPLAINT

insulation and reportedly made plans to introduce a spicy chemical to its wiring to stop rodents from eating it.

44.    Upon information and belief, Honda has also introduced its own proprietary rodent tape (depicted below) which discourages or repels rodent attacks:



45.    Unlike Honda, Jeep has not acknowledged that this issue plagues Class Vehicles and has done nothing to attempt to eliminate the problem. As it stands, Jeep has turned this Defect into another source of income for itself and its dealers by charging Class Vehicle owners and lessees for repairs (or charging for purchase and installation of repellants, traps, and other preventive measures) to deal with the adverse consequences of the Defect that Jeep should, itself, be covering under the Warranty.

46.    Jeep has evaded and continues to evade its Warranty obligations by failing to tell consumers that their Class Vehicles are defective and by claiming that the susceptibility to rodent damage is "environmental" and not a result of the Defect which requires Warranty repairs or replacements.

47.    However, as the consumer complaints below demonstrate, environmental conditions are not the root cause of the Defect – rather, upon information and belief, the environmentally-friendly and less expensive soy- or bio-based materials are the problem. While Class Vehicles are essentially being attacked by rodents and other animals, older vehicles manufactured without these materials that are exposed to similar conditions do not experience rodent and wild animal caused damage.

CLASS ACTION COMPLAINT

48.     The prevalence of complaints across the country from Jeep lessees and owners and the high volume of media and consumer watchdog coverage of this issue highlight that Jeep knows or should have known of the Defect.

49.     Jeep has known (or it should have known) that soy-/bio-based materials, including wiring insulation and coating, attract rodents and other pests that damage Class Vehicles. In fact, employees at Jeep dealerships routinely inform consumers that rodent damage is very common, and have even acknowledged that it is the bio-based or soy-based materials in the automobiles that are attracting these pests. Yet, notwithstanding its knowledge of the Defect, Jeep consistently refuses to repair the Class Vehicles under the Warranty when the Defect manifests.

**C.    Similar Experiences and Complaints by Consumers**

50.     Plaintiff's experiences are by no means isolated or outlying occurrences. Indeed, the Internet is replete with examples from blogs and other websites where Jeep consumers have complained of rodents chewing through their Class Vehicles' wiring insulation, sometimes on multiple occasions.

51.     For Example:

- User **Dozer13jk** stated on **September 13, 2015** on the site http://www.wranglerforum.com/f274/squirrels-causing-damage-1407026.html that "In the last year, I've easily had around 1,500 in damages caused by squirrels. Luckily, my insurance covers it and it only leaves me with a $250 deductible to pay. They get under my hood, and chew on the battery, wires, cables, and whatever else they can find to gnaw on. On the outside, they love chewing my hood latches. Anybody have any tips? A 22 rifle isn't an option here considering I live in an active apartment complex with homes and vehicles everywhere. I've set up traps and have caught a few, but there are just too many. Maybe repellents would be an option? I don't get it, are they attracted to my Jeep because it's orange or are they just bored?

CLASS ACTION COMPLAINT

- User **cherokee-gym** posted on **December 19, 2015** on the site http://jeepgarage.org/f73/rodents-love-my-engine-bay-93311.html that "A few days ago I discovered a nest of lint, food and little turds on top of the engine cover.  Of all the vehicles I have owned, my Jeep is the only one that seems to attract these pesky rodents.  Is anyone else experiencing this and what solutions do you use, if any?"

- User **Robey5** posted on **December 23, 2015** on the site http://jeepgarage.org/f73/rodents-love-my-engine-bay-93311.html that "Every time I pop the hood, I take a look to make sure that things aren't chewed up in there, and I have applied the bounce dryer sheets IN the car in my attempt to deter them from nesting in the vehicle: seems to be working. I also store a couple cars in the winter: bounce dryer sheets in the interior is a big help (at least I think....).

52.     Complaints on the NHTSA website reveals that many consumers have experienced wire damage as a result of rodents and other animals chewing the wiring in multiple Jeep models.

53.     Moreover, it is clear under Jeep's Warranty that damages such as the one's Plaintiff and the Class are complaining over are covered, yet Jeep refuses to acknowledge this fact and instead makes Plaintiff and the Class pay for the repair of the design defect of the Class Vehicles out of their own pocket.  Specifically, under Jeep's Warranty, Section 2, part 2.1 it states:

"**A. What's Covered at No Cost to You**

The Basic Warranty covers the cost of all parts and labor needed to repair any defective item on your vehicle that was supplied by Chrysler Motors — that is, **defective in material, workmanship, or factory preparation. There is no list of covered parts since the only exception is tires**. You pay nothing for these repairs.  These Warranty repairs or adjustments — including all parts and labor connected with them — will be made by your

CLASS ACTION COMPLAINT

dealer at no charge, using new or remanufactured parts." (emphasis added).

54. Plaintiff and her Class Vehicle are still covered by the basic Warranty offered by Jeep as the basic Warranty covers the Class Vehicle for either **thirty-six (36) months** or **36,000 miles**, whichever comes first. The exact Warranty language states:

"**E. When It Ends**

The Basic Warranty lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first. But the following items are covered only for 12 months or for 12,000 miles on the odometer, whichever occurs first:

• brakes (rotors, pads, linings, and drums);

• wiper blades; and

• clutch discs."

It is clear based on Defendant's own Warranty language that the defects of Plaintiff's Class Vehicle are covered under Jeep's Warranty, yet Jeep refuses to acknowledge responsibility of their design defect and will not pay the costs of fixing either Plaintiff's Class Vehicle or any of the Class Vehicles in the State of California.

55. Also, Plaintiff and her Class Vehicle do not fall into any categories that would not be covered under the Warranty. On information and belief, Plaintiff and the Class Members did not engage in any conduct with their Class Vehicles that would otherwise void the Warranty or would not be covered under the Warranty. Under Section 3 of the Warranty titled "What's not covered," the Warranty details a myriad of instances or occurrences that would not be covered under the Warranty, ranging from unauthorized modifications of the Class Vehicles (Section 3.1) to maintenance costs (Section 3.3) to racing the Class Vehicle (Section 3.5). The Warranty does not cover damage from "environmental factors, and that language is below:

///

///

-13-

CLASS ACTION COMPLAINT

"**3.2 Environmental Factors Not Covered**

Your warranties don't cover damage caused by environmental factors such as airborne fallout, chemicals, tree sap, salt, ocean spray, acid rain, and road hazards. Nor do your warranties cover damage caused by **hailstorms, windstorms, tornadoes, sandstorms, lightning, floods, and earthquakes**." (emphasis added).

56.    Also, the Warranty on the Class Vehicles does not cover "certain types of corrosion" as stated on Section 3.6 of the Warranty:

"Your warranties don't cover the following:

• corrosion caused by accident, damage, abuse, or vehicle alteration;

• surface corrosion caused by such things as industrial fallout, sand, salt, hail, and stones;

• corrosion caused by the extensive or abnormal transport of caustic materials like chemicals, acids, and fertilizers; and

• corrosion of special bodies, body conversions, or equipment not made or supplied by Chrysler Motors."

57.    Finally, Section 3.7 of the Warranty deals with "other exclusions":

"Your warranties don't cover the costs of repairing damage or conditions caused by any of the following:

• fire or accident;

• abuse or negligence;

• misuse — for example, driving over curbs or overloading;

• tampering with the emission systems, or with a part that could affect the emission systems;

• use of used parts, even if they were originally supplied by Chrysler Motors (however, authorized Chrysler Motors or MOPAR remanufactured parts are covered);

CLASS ACTION COMPLAINT

• if the vehicle is a Plymouth or Dodge Neon -- installing aftermarket air conditioning on it; or

• any changes made to your vehicle that don't comply with Chrysler Motors specifications."

58.    Plaintiff and her Class Vehicle do not fall into any of the categories listed in Section 3 of the Warranty ("What's not covered").  On information and belief, Plaintiff and the Class and their Class Vehicles do not fall into the any categories listed in Section 3 of the Warranty.

## IV.    <u>CLASS ALLEGATIONS</u>

59.    Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Federal <u>Rules of Civil Procedure</u>, <u>Rule</u> 23(c).  Plaintiff seeks to represent a Class composed of and defined as:

> **All persons or entities in California who (a) currently own or lease a Class Vehicle with soy-or-bio-based wiring; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.**

60.    The above Classes and Sub-Classes may be referred to herein by the state sub-class or collectively as the "Class." Excluded from the Class are Jeep, its affiliates, subsidiaries, parents, successors, predecessors, any entity in which Jeep or its parents have a controlling interest; Jeep's current and former employees, officers and directors; the Judge(s) and/or Magistrate(s) assigned to this case; any person who properly obtains exclusion from the Class; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiff reserves the right to modify, change, or expand the Class definitions based upon discovery and further investigation.

///

///

CLASS ACTION COMPLAINT

## A.    Numerosity

61.    Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Jeep and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that thousands of Class members have been subjected to the conduct by Jeep herein alleged.

## B.    Commonality

62.    There are questions of law and fact common to each Class predominating over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

(a)    Whether Jeep engaged in the conduct alleged herein;

(b)    Whether Jeep designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

(c)    Whether the Class Vehicles are defective in that they were and are sold with soy-or-bio-based wiring insulation and other parts or components;

(d)    Whether Jeep knew of the Defect but failed to disclose the problem and its consequences to its customers;

(e)    Whether a reasonable consumer would consider the Defect or its consequences to be material;

(f)    Whether the Defect causes Class Vehicles to malfunction;

(g)    Whether Jeep's conduct violates state consumer protection statutes;

(h)    Whether Jeep's conduct violates state and federal warranty laws and other laws as asserted herein;

(i)    Whether Plaintiff and the other Class members overpaid for their Class Vehicles as a result of the Defect alleged herein;

CLASS ACTION COMPLAINT

      (j)      Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

      (k)      Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

There are common answers to these questions which further demonstrate that class treatment is appropriate in this case.

**C.**    <u>**Typicality**</u>

63.    All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Jeep's uniform course of conduct described herein. Plaintiff and all Class members have the same claims against Jeep relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members. Plaintiff and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Jeep's wrongful conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

**D.**    <u>**Adequacy of Representation**</u>

64.    Plaintiff is an adequate representative for the Class because her interests do not conflict with the interests of the Class that they seeks to represent; Plaintiff has retained counsel competent and highly experienced in complex class action and consumer fraud litigation – and counsel regularly works with co-counsel who prosecute automobile defect cases, and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**E.**    <u>**Superiority of Class Action**</u>

65.    A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and all Class members. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Jeep's

conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Jeep. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, inter alia, the records (including databases, e-mails, etc.) Jeep maintains regarding sales and leases of Class Vehicles. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

66.    Jeep has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

67.    Given that Jeep has engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

68.    The Class is defined in terms of objective characteristics and common transactional facts; namely, the purchase or lease of Class Vehicles containing the Defect that resulted in rodent damage to Class Vehicle electrical wiring and systems. Class membership will be readily ascertainable from Jeep's business records.

69.    Plaintiff reserves the right to revise the above Class definitions based on facts adduced in discovery.

70.    Class Plaintiff contemplates the eventual issuance of notice to the proposed Class Members of each of the Plaintiff Classes that would set forth the subject and nature of the instant action. The Defendant's own business records can be utilized for assistance in

CLASS ACTION COMPLAINT

the preparation and issuance of the contemplated notices. To the extent that any further notice is required, additional media and/or mailings can be used.

71.    Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## V.    DELAYED DISCOVERY

72.    Defendant, as an automobile manufacturer doing business in the State of California, had a duty to disclose to prospective Plaintiff Classes the true facts surrounding Defendant's practices with respect to manufacturing and distributing the Class Vehicles and marketing the Class Vehicles to Class Members.  In addition, Defendant knew they possessed special knowledge about these practices and policies, most notably using a soy-based wiring system for their Class Vehicles, which results in rodents and other animals eating the wires and thereby making the Class Vehicles inoperable.

73.    Plaintiff and Plaintiff Class did not discover the fact that they were victims of Defendant until shortly before the filing of this lawsuit.  As a result, the applicable statutes of limitation were tolled until such time as Plaintiffs discovered their claims.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

### [15 U.S.C. §§ 2301 *et seq.*]

### (Against FCA U.S., LLC and DOES 1 through 100, Inclusive)

74.    Plaintiff and the Plaintiff Classes re-allege and incorporate by reference all of the allegations in the preceding paragraphs of this complaint as though fully set forth herein.

75.    Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA").  15 U.S.C. § 2301(3).

76.    The Class Vehicles are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

-19-

CLASS ACTION COMPLAINT

77.    Jeep is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

78.    Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

79.    Jeep's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class Vehicles' implied warranties are accounted for under Section 2301(7) of the MMWA, which warranties Jeep cannot disclaim under the MMWA, when it fails to provide merchantable goods.

80.    As set forth herein, Jeep breached its warranties with Plaintiff and Class members.

81.    Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

> "[T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . .. [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

82.    Class Vehicles share a common Defect in that, upon information and belief, they contain soy-based or other bio-based wiring and wiring components (and other parts) that attract rodents and other pests and make Class Vehicles predisposed to damage in the form of chewed and gnawed wires.

83.    Despite demands by Plaintiff and the Class for Jeep to pay the expenses associated with diagnosing and repairing the defective wires and damaged wiring systems, Jeep has refused to do so.

84.    Jeep breached these specific warranties as described in more detail above and also breached them generally: by manufacturing soy-or-bio-based insulated wiring systems that are defective in materials, and workmanship and are likely to fail due to damage caused by rodents; by selling defective wiring systems not in merchantable condition, which present an unreasonable risk of failure and are unfit for the ordinary purpose; by refusing to repair or replace, free of charge, the defective soy- or bio-based insulated wiring systems or any of their component parts; by forcing consumers to pay for out-of-pocket costs for diagnostics, labor, repair, and replacement parts; and by not curing the Defect once it was known and identified.

85.    Plaintiff and Class members' interactions with Jeep suffice to create privity of contract between Plaintiff and Class members, on the one hand, and Jeep, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class members are intended third-party beneficiaries of contracts between Jeep and its authorized dealers, and specifically, of Jeep's implied warranties. Jeep's dealers are intermediaries between Jeep and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Jeep with respect to Plaintiff and Class members' purchases or leases of Class Vehicles. Jeep's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

86.    As a direct and proximate result of Jeep's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class members have suffered damages in an amount to be proven at trial.

87.    Plaintiff and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Jeep is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Class Vehicles by retaining them.

CLASS ACTION COMPLAINT

88.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of **$25.00**. The amount in controversy of this action exceeds the sum of **$50,000.00**, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

89.    Plaintiff and Class members are entitled to recover damages as a result of Jeep's breach of warranties.

90.    Plaintiff and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## SECOND CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

**(Against FCA U.S., LLC and DOES 1 through 100, Inclusive)**

91.    Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

92.    Jeep is a "merchant" as defined under the Uniform Commercial Code ("UCC").

93.    The Class Vehicles are "goods" as defined under the UCC.

94.    Jeep expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Jeep also expressly warranted that they would repair and/or replace defects in material and/or workmanship that occurred during the Warranty period free of charge.

95.    Jeep breached its Warranty by selling and leasing to Plaintiff and Class Members Class Vehicles with the Defect that Jeep knew and knows attracts rodents and other pests and makes wiring in the Class Vehicles prone to damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

96.    Jeep further breached the Warranty by failing to repair and/or replace Plaintiff's and other Class members' defective wiring components or parts when the defective wiring systems failed during the Warranty period.

97.    Plaintiffs purchased and leased new vehicles subject to Jeep's Warranty.  While Plaintiff's Class Vehicles was still covered by the Warranty, the soy-or-bio-based material comprising the electrical wiring in Plaintiff's Class Vehicle attracted rodents or other animals that chewed through the wiring leaving the vehicle partially or fully inoperable.  Pursuant to the terms of the Warranty, Plaintiff brought her vehicle to a Jeep authorized service center and requested that such repairs be completed under the Warranty. Despite these requests, Jeep denied their warranty claims on the basis that the damage was caused by "other", "outside", or "environmental" forces, which Jeep contends are not covered under the Warranty. Jeep knew of the aforesaid Defect and continues to have knowledge of the Defect and breaches of its Warranty, yet it intentionally failed and fails to notify Plaintiff and members of the Class of the Defect and cover Defect-related damage under the terms of the Warranty.

98.    As a result of Jeep's actions, Plaintiff and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

99.    Jeep's attempt to disclaim or limit its express warranties vis à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Jeep's Warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

100.    Plaintiff and Class members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Jeep's conduct described herein.

101.    Jeep was provided notice of these issues by complaints lodged by consumers directly and via NHTSA and elsewhere—which vehicle manufacturers like Jeep routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public.

-23-

CLASS ACTION COMPLAINT

### THIRD CAUSE OF ACTION

### <u>BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY</u>

### (Against FCA U.S., LLC and DOES 1 through 100, Inclusive)

102.    Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

103.    Jeep is a "merchant" as defined under the UCC.

104.    The Class Vehicles are "goods" as defined under the UCC.

105.    Jeep impliedly warranted that the Class Vehicles were of a merchantable quality.

106.    Jeep breached the implied warranty of merchantability because the Class Vehicles were not of a merchantable quality due to Defect, and the associated problems caused by the Defect.

107.    Plaintiff's and Class members' interactions with Jeep suffice to create privity of contract between Plaintiff and Class members, on the one hand, and Jeep, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class members are intended third-party beneficiaries of contracts between Jeep and its authorized dealers, and specifically, of Jeep's implied warranties. Jeep's dealers are intermediaries between Jeep and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Jeep with respect to Plaintiff's and Class members' purchases or leases of Class Vehicles. Jeep's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

108.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages.

109.    Jeep's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Jeep's

Warranty limitations are unenforceable because Jeep knowingly sold a defective product without informing consumers about the Defect.

110.  Plaintiff and Class members have complied with all obligations under the Warranty or otherwise have been excused from performance of said obligations as a result of Jeep's conduct described herein.

## FOURTH CAUSE OF ACTION

## DECLARATORY RELIEF (PLEADING IN THE ALTERNATIVE)

### (Against FCA U.S., LLC and DOES 1 through 100, Inclusive)

111.  Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

112.  This claim is brought by Plaintiff, on behalf of herself and on behalf of the Class and the subclasses thereof.

113.  Jeep designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Class Vehicles that contain the Defect – a material defect – as described above.

114.  There exists an actual controversy, over which this Court has jurisdiction, between Plaintiff and Jeep concerning their respective rights, duties and obligations for which Plaintiff desires a declaration of rights under the Class Vehicle warranties. Pursuant to 28 U.S.C. § 2201, or in the alternative, the state declaratory judgment laws of the state in which Plaintiff resides, this Court may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

115.  Jeep warrants and advertises the reliability and workmanship of its Class Vehicles. Plaintiff contends that Jeep breached its warranties to Plaintiff and the Class members when they received Class Vehicles at the time of the purchase that were worth less than what was promised by Jeep's warranties.

CLASS ACTION COMPLAINT

116.    Jeep's warranties explicitly warrant materials and workmanship and do not disclaim or exclude the Defect or the type of damage suffered as a result of the Defect in the Class Vehicles.

117.    Plaintiff seeks a declaration of the parties' respective rights, duties and obligations under the Class Vehicle warranties – including the Warranty – and other promises made by Jeep related to the quality and workmanship of the Class Vehicles, and specifically that Plaintiff and the Class members are entitled to recover their out-of-pocket expenses related to repairs and/or replacement (including labor costs) of their defective and unworkmanlike Class Vehicles under the Class Vehicle warranties.

118.    Specifically, Plaintiff seeks a declaratory judgment that Jeep's warranties for Class Vehicles provide coverage for, and are to be read to include coverage for, rodent or other animal damage in Class Vehicles resulting from chewing or eating soy-or-bio-based parts or materials in Class Vehicle electrical wiring and wiring systems. Plaintiff also seeks a declaratory judgment that nothing in Jeep's warranties for Class Vehicles disclaims or excludes warranty coverage for the Defect described herein.

119.    A judicial declaration is necessary in order that Plaintiff and the Class members may ascertain their rights and duties under Jeep's Class Vehicle warranties. At this time, Plaintiff and the Class members have Class Vehicles that were defective upon lease or purchase, and/or continue to remain defective.

120.    Plaintiff and Class members suffered damages at the time of their purchase or lease and have paid or will have to pay future repair and/or replacement costs as a direct result of the Defect in the Class Vehicles.

## FIFTH CAUSE OF ACTION

## UNLAWFUL COMPETITION AND UNLAWFUL BUSINESS PRACTICES

### [California Business and Professions Code §§ 17200 et seq.]

### (Against FCA U.S., LLC and DOES 1 through 100, Inclusive)

121.    Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged

in this Complaint.

122.    This claim is brought by Plaintiff, on behalf of herself and on behalf of the Class and the subclasses thereof.

123.    At all times relevant hereto, Jeep has engaged in "unfair" business practices and/or acts by falsely representing the qualities of its express and implied warranties for Class Vehicles; by misrepresenting the workmanship of its Class Vehicles; by failing to disclose the Defect to consumers; and by refusing to provide warranty coverage for the Defect.

124.    The acts and practices alleged herein are unfair because they caused Plaintiff and Class members, and reasonable consumers like them, to believe that Jeep was offering something of value that did not, in fact, exist. Jeep intended for Plaintiff and Class members to rely on its representations. As a result, purchasers and lessees, including Plaintiff, reasonably perceived that they were receiving Class Vehicles with certain benefits. This perception induced reasonable purchasers to purchase or lease Class Vehicles which they would not otherwise have done had they known the truth.

125.    The gravity of the harm to members of the Class resulting from these unfair acts and practices is outweighed any conceivable reasons, justifications and/or motives of Jeep for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Jeep engaged in unfair business practices within the meaning of the Unfair Competition Law ("UCL").

126.    A business act or practice is also "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

127.    Jeep engaged in a uniform course of conduct which was intended to, and did in fact, deceive Plaintiff and Class members and induce them into buying Class Vehicles. Jeep's course of conduct and marketing practices were fraudulent within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the Class, into believing that they were entitled to a benefit that did not, in

fact, exist. Jeep's misrepresentations are likely to deceive and have deceived the public.

128.   A business act or practice is also "unlawful" under the UCL if it violates any other law or regulation. Jeep has violated the MMWA, the CLRA, and other laws as set forth herein.

129.   Jeep has engaged in unfair competition and unfair, unlawful and fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and Class members that the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem). Jeep should have disclosed the Defect and this information because Jeep was in a superior position to know the true facts related to the Defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to the Defect. Plaintiff and Class members relied upon Jeep's express representations and promises, as well as omissions, regarding the workmanship of and the warranties for the Class Vehicles, believed them to be true, and would not have agreed to purchase or lease Class Vehicles had they known the truth about the Defect.

130.   Therefore, the omissions and acts of concealment, fraud, and deceit by Jeep pertained to information that was material to Plaintiff and the Class members, as it would have been to all reasonable consumers.

131.   At all times relevant hereto, Jeep had a duty to disclose the Defect because Jeep had exclusive knowledge of the Defect prior to making sales and leases of Class Vehicles and because Jeep made partial representations about the quality of Class Vehicles but failed to fully disclose that the Defect plagues Class Vehicles.

132.   In failing to disclose that Class Vehicles contain the Defect, the true nature of the quality and workmanship of Class Vehicles and suppressing other material facts from Plaintiff and Class members, Jeep breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and Class members.

CLASS ACTION COMPLAINT

133.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

134.    Defendant is a "person" as defined under of Business & Professions Code § 17021.

135.    Since at least four years prior to the present Complaint filing and at all times relevant hereto, by and through the conduct described herein, the Defendant have engaged in unfair, unlawful and fraudulent business practices, in violation of California Business & Professions Code §§ 17200, et seq., and have thereby deprived Plaintiff, and all persons in interest, of fundamental rights and privileges guaranteed to all employees under California law.

136.    Defendant operates in California and provide services in California to the public as defined in Business & Professions Code §§ 17022 and 17024.

137.    Defendant, as set forth in this Complaint, *supra*, engaged in false, unfair and misleading business practices, consisting of acts and omissions that include, but are not limited to:

(a)    The fact that Defendant used soy-based wiring in the Class Vehicles which were purchased by the Class Members;

(b)    The fact that Defendant knew that the soy-based wires were defective and continued to use them in the Class Vehicles and market those Class Vehicles to Class Members;

(c)    The fact that Defendant breach its express Warranty when Defendant represented that the Class Vehicles would operate and function properly when they do not;

(d)    The fact that Defendant breach its implied warranty of merchantability under the UCC by representing to the Class Members that the Class Vehicles would operate and function properly when they do not;

CLASS ACTION COMPLAINT

(e)    The fact that Defendant refused to provide reimbursement for the defective Class Vehicles once Class Members notified Defendant through mechanic shops and car dealerships that the Class Vehicles were defective based on Defendant's use of soy-based wiring;

(f)    The fact that Defendant failed to disclose to Class Members the defects in the Class Vehicles due to Defendant's use of soy-based wiring systems;

(g)    The fact that Defendant violated California <u>Business and Professions Code</u> §§ 17200 et seq. by knowingly manufacturing, distributing, and marketing the Class Vehicles with the defective soy-based wiring;

(h)    The fact that within the four years prior to the filing of this Complaint, Defendant knowingly manufacturing, distributing, and marketing the Class Vehicles with the defective soy-based wiring;

(i)    The fact that Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation;

(j)    The fact that Plaintiff and the Class Members are entitled to restitutionary disgorgement of all monies and revenues generated as a result of such practices; and

(k)    The fact that Defendant should be enjoined from engaging in such conduct in the future.

138.    Defendant's practices are unlawful, unfair, deceptive, untrue, and misleading. California residents and consumers like Plaintiff and the Class Members are likely to be deceived by these practices.

139.    As a direct and proximate result of these acts and omissions, Plaintiff, is informed and believes, and based upon that information and belief alleges, that the Defendant was able to unfairly compete with other facilities in the state of California by not notifying California residents and consumers that the Class Vehicles were defective due to the soy-based wiring in violation of <u>Business & Professions Code</u>

Chapters 4 and 5, et al. Due to this unfair business practice, Defendant has been able to increase both its production and profits, while simultaneously deceasing its costs, as compared to other comparable entities doing business in the state of California.

140. The victims of this unfair business practice include, but are not limited to, all residents in the State of California who purchased a Class Vehicle from Defendant, competitors of Defendant in the state of California, and the general public.

141. Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant performed the above-mentioned acts with the intent of gaining an unfair competitive advantage and thereby injuring Plaintiff and the Class Members, other California residents, other competitors, and the general public.

142. By and through their unfair, unlawful and/or fraudulent business practices described herein, Defendant has obtained valuable property, and money from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all residents of the State of California of valuable rights and benefits guaranteed by law, all to their detriment.

143. Plaintiff and the Class have injury-in-fact as a result of Defendant's conduct. Moreover, Plaintiff and the Class have lost money and time as a direct result of Defendant's unfair, unlawful, deceptive and fraudulent conduct.

144. All of the acts described herein are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business & Professions Code §§ 17200, *et seq.*

145. Plaintiff, individually, and on behalf of the Class Members, is entitled to, and does seek such relief as may be necessary to disgorge the profits which the Defendant has acquired, or of which Plaintiff has been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff, and the members of the Plaintiff Classes, is not obligated to establish individual knowledge of the unfair practices of Defendant in order to recover restitution.

146.   Plaintiff, individually, and on behalf of the Class Members, is further entitled to and does seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendant from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

147.   Plaintiff, individually, and on behalf of the Class Members, has no plain, speedy, and/or adequate remedy at law to redress the injuries which she has suffered as a consequence of the Defendant's unfair, unlawful and/or fraudulent business practices.  As a result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff and the Class Members have suffered and will continue to suffer irreparable harm unless the Defendant is restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

148.   Plaintiff also alleges that if Defendant is not enjoined from the conduct set forth herein above, they will continue to fail to notify residents in the State of California that Defendant is continuing to manufacture, market and distribute the Class Vehicles of which Defendant knows are defective due to the soy-based wiring.

149.   Plaintiff, individually, and on behalf of the Class Members, requests that the Court issue a preliminary and permanent injunction prohibiting the Defendant from marketing and distributing the Class Vehicles to residents of the State of California.

150.   Plaintiff, individually, and on behalf of the Class Members, also requests that the Court order Defendant to disgorge all illegally obtained monies from failing to inform residents of the State of California that the Class Vehicles Defendant was marketing were defective in violation of California Business & Professions Code §§ 17200, *et seq*.

151.   As Plaintiff seeks to enforce an important right affecting the public interest, to wit, the knowing and intentional marketing and distributing, by Defendant, of the Class Vehicles which are defective due to the soy-based wiring systems, Plaintiff requests an award of attorneys' fees, pursuant to California Code of Civil Procedure § 1021.5.

///

## SIXTH CAUSE OF ACTION

## <u>VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT</u>

### [<u>Civil Code</u> § 1750 *et seq*.]

### (Against FCA U.S., LLC and DOES 1 through 100, Inclusive)

152. Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

153. The Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . .." <u>Civil Code</u> § 1770.

154. Jeep Defendant is a "person" as defined by <u>Civil Code</u> § 1761(c).

155. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

156. Plaintiff and the Class members are "consumers" as defined by <u>Civil Code</u> § 1761(d).

157. Jeep made numerous representations concerning the Class Vehicles specifications that were misleading, including marketing and advertising the workmanship of Class Vehicles and the nature and extent of Jeep's Warranty.

158. Jeep also omitted material facts about the Class Vehicles, namely the Defect.

159. In purchasing or leasing Class Vehicles, Plaintiff and Class members were deceived by Jeep's failure to disclose that the Class Vehicles contain the Defect, resulting in expensive damage for which damage Jeep will not provide coverage under its express or implied warranties.

160. Jeep's conduct, as hereinabove described, is in violation of <u>Civil Code</u> § 1770 on the following grounds:

        (a)    (a)(2): misrepresenting the source, sponsorship, approval or certification of goods or services;

(b)    (a)(5): representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(c)    (a)(7): representing that goods are of a particular standard, quality, or grade, if they are another;

(d)    (a)(9): advertising goods with the intent not to sell them as advertised; and

(e)    (a)(16), representing that goods have been supplied in accordance with a previous representation when they have not.

161.    Jeep knew that Class Vehicles contain the Defect and are not suitable for their intended use.

162.    Jeep had a duty to disclose the Defect because Jeep had exclusive knowledge of the Defect prior to making sales and leases of Class Vehicles and because Jeep made partial representations about the quality of Class Vehicles but failed to fully disclose that Defect plagues Class Vehicles.

163.    Specifically, Jeep was under a duty to Plaintiff and Class members to disclose the defective nature of the Class Vehicles because:

(a)    Jeep was in a superior position to know the true state of facts about the Defect – a defect that can pose a safety risk – and associated repair costs in the Class Vehicles;

(b)    Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles have a defect that affects operability of Class Vehicles and creates safety concerns until manifestation of the Defect; and

(c)    Jeep knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the Defect until manifestation of the Defect.

CLASS ACTION COMPLAINT

164.    In failing to disclose the wiring Defect in Class Vehicles, Jeep has knowingly and intentionally concealed material facts and breached their duty not to do so.

165.    The facts concealed or not disclosed by Jeep to Plaintiff and Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or they would have paid less.

166.    As a direct and proximate result of Jeep's unfair and deceptive acts or practices, Plaintiff and Class members have been harmed.

167.    Under Civil Code § 1780(a), Plaintiff and the Class members seek actual damages, an order enjoining Jeep from further engaging in the unfair and deceptive acts and practices alleged herein, and restitutionary relief to remedy Jeep's violations of the CLRA as alleged herein.

168.    Under Civil Code § 1780(b), Plaintiff seeks an additional award against Jeep of up to **$5,000.00** for each Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA.  Jeep knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons. Jeep's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Jeep's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Jeep's conduct.

169.    Pursuant to Civil Code § 3345, Plaintiff seeks an award of trebled damages on behalf of all senior citizens and disabled persons comprising the Class as a result of Jeep's conduct alleged herein.

170.    Pursuant to <u>Civil Code</u> § 1780(a)(4), Plaintiff also seeks punitive damages against Jeep because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the Class members to potential cruel and unjust hardship as a result.  Jeep intentionally and willfully deceived Plaintiff on life-or-death matters, and concealed material facts that only Jeep knew. Jeep's unlawful conduct likewise constitutes malice, oppression, and fraud warranting exemplary damages under California <u>Civil Code</u> § 3294.

171.    Plaintiff further seeks an order awarding costs of court and attorneys' fees under <u>Civil Code</u> § 1780(e), and any other just and proper relief available under the CLRA.

172.    On **October 6, 2017**, Plaintiff notified Defendant of the damages and Defect in her Class Vehicle in satisfaction of <u>Civil Code</u> § 1782. Plaintiff has made pre-suit attempts to remedy the Defect in her Class Vehicle, to no avail.

**SEVENTH CAUSE OF ACTION**

**<u>VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTIES ACT FOR BREACH OF EXPRESS WARRANTIES</u>**

**(Against FCA U.S., LLC and DOES 1 through 100, Inclusive)**

173.    Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

174.    Plaintiff and Class members are "buyers" within the meaning of the SBCWA. <u>See</u> <u>Civil Code</u> § 1791(b).

175.    The Class Vehicles are "consumer goods" within the meaning of <u>Civil Code</u> § 1791(a).

176.    Jeep is a "manufacturer" within the meaning of <u>Civil Code</u> § 1791(j).

177.    Plaintiff and Class members bought, or leased automobiles manufactured by Jeep.

178.    Jeep made express warranties to Plaintiff and Class members within the meaning of <u>Civil Code</u> §§ 1791.2 and 1793.2 as set forth herein.

179.    Specifically, Jeep expressly warranted that the Warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Jeep, subject to the exceptions indicated under 'What Is Not Covered' . . . ," which was described in detail above.

180.    As set forth herein in detail, Class Vehicles are inherently defective in that they contain electrical wiring systems that are made with or consist of soy-or-bio-based materials that attract rodents and other pests which chew or eat the wiring, causing partial or total failure in Class Vehicles. Contrary to Jeep's position, the Defect is covered under its Warranty.

181.    The Defect jeopardizes the safety of drivers and passengers of Class Vehicles, and other drivers on the road, and substantially impairs the use, value, and safety of Class Vehicles to reasonable consumers like Plaintiff and Class members.

182.    Plaintiff delivered her Class Vehicle to Jeep or its authorized repair facility to repair the Defect and notified Jeep in writing of the need for repair, but Jeep failed and continues to fail to make repairs to Plaintiff's Class Vehicles under Jeep's Warranty.

183.    As a result of Jeep's breach of its express warranties, Plaintiff and Class members received goods containing a dangerous condition that substantially impairs the value of the goods to Plaintiff and Class members.  Plaintiff and other Class members have been damaged as a result of the diminished value of Jeep's products, the Defect, the products' malfunctioning due to the Defect, and the non-use of their Class Vehicles.

184.    Pursuant to Civil Code §§ 1793.2 & 1794, Plaintiff and other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their Jeep vehicles, or the overpayment or diminution in value of their Class Vehicles.

185.    Pursuant to Civil Code § 1794, Plaintiff and Class members are also entitled to costs and reasonable attorneys' fees.

186.    The above-cited actions of Defendant was done with malice, fraud or oppression, and in conscious disregard of the Plaintiff's rights and with the intent to vex,

-37-

injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages pursuant to California <u>Civil Code</u> § 3294 against Defendant in an amount sufficient to punish and deter others from engaging in similar conduct, which will be proven according to proof at time of trial.

## EIGHTH CAUSE OF ACTION

## <u>VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY</u>

### [<u>Civil Code</u> § 1791.1 & 1792 *et seq.*]

### (Against FCA U.S., LLC and DOES 1 through 100, Inclusive)

187.  Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

188.  Plaintiff and Class members are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act ("SBCWA").  <u>See</u> <u>Civil Code</u> § 1791(b).

189.  The Class Vehicles are "consumer goods" within the meaning of <u>Civil Code</u> § 1791(a).

190.  Jeep is a "manufacturer" within the meaning of <u>Civil Code</u> § 1791(j).

191.  Jeep impliedly warranted to Plaintiff and the other Class members that its Class Vehicles were "merchantable" within the meaning of <u>Civil Code</u> §§ 1791.1(a) & 1792.

192.  In reality, the Class Vehicles do not possess those qualities that a buyer would reasonably expect.

193.  Section 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.

194.   The Class Vehicles are not suitable for the market and would not pass without objection in the automotive industry and market because of the wiring Defect in Class Vehicles' electrical wiring systems. Specifically, the material used in Class Vehicle wiring, wiring insulation, and/or wiring harnesses fails to protect vital vehicular components from being eaten by rodents, and instead causes Class Vehicles to fail due to wire damage caused by rodents that are attracted to materials in the wiring products.

195.   The material used in Class Vehicles' wiring systems makes the Class Vehicles unsuitable for safe driving. Class Vehicles are not in merchantable condition, and are therefore, not fit for their ordinary purposes.

196.   Furthermore, Class Vehicles are not adequately labeled because the labeling fails to disclose the wiring Defect.

197.   Jeep breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the wiring Defect. Furthermore, the Defect has caused Plaintiff and other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate.

198.   As a direct and proximate result of Jeep's breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose defective condition substantially impairs their value to Plaintiff and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value of Jeep's products, the products' malfunctioning, and the, nonuse of their Class Vehicles.

199.   Plaintiff and the other Class members have had sufficient direct dealings with either Jeep or its agents (e.g., dealerships and technical support) to establish privity of contract between Jeep on one hand, and Plaintiff and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Jeep and its dealers, and specifically, of Jeep's implied warranties. The

dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the Warranty agreements provided with the Class Vehicles; the Warranty agreements were designed for and intended to benefit the consumers only.

200. Pursuant to <u>Civil Code</u> §§ 1791.1(d) and 1794, Plaintiff and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of or a buyback of their Jeep vehicles, or the overpayment or diminution in value of their Class Vehicles.

201. Pursuant to <u>Civil Code</u> § 1794, Plaintiff and Class members are also entitled to costs and reasonable attorneys' fees.

202. The above-cited actions of Defendant was done with malice, fraud or oppression, and in conscious disregard of the Plaintiff's rights and with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages pursuant to California <u>Civil Code</u> § 3294 against Defendant in an amount sufficient to punish and deter others from engaging in similar conduct, which will be proven according to proof at time of trial.

**NINTH CAUSE OF ACTION**

**<u>BREACH OF EXPRESS WARRANTY</u>**

**[<u>Commercial Code</u> § 2313]**

**(Against FCA U.S., LLC and DOES 1 through 100, Inclusive)**

203. Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

204. Jeep is and was at all relevant times a merchant with respect to motor vehicles. <u>Commercial Code</u> § 2104.

205. Pursuant to <u>Commercial Code</u> § 2313:

(1) Express warranties by the seller are created as follows:

CLASS ACTION COMPLAINT

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

206.  In its Warranty and in advertisements, brochures, and through other statements in the media, Jeep expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the Warranty period. For example, the following language appears in all Class Vehicle Warranty manuals, that this Warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Jeep, subject to the exceptions indicated under "What Is Not Covered . . .," as described in detail above.

207.  Jeep's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

208.  Jeep breached the express Warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Jeep. Jeep has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects, namely the soy-or-bio-based electrical wiring parts and components.

209.  At the time of selling or leasing Class Vehicles, Jeep did not provide Class Vehicles that conformed to its express warranties.

210.  Furthermore, the Warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Jeep has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

211.  Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited Warranty of repair or adjustments to parts defective in materials

CLASS ACTION COMPLAINT

or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

212.   Also, as alleged in more detail herein, at the time that Jeep warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Jeep wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

213.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Jeep's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

214.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Jeep knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Jeep and Class members, and Jeep knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

215.   Jeep was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

216.   As a direct and proximate result of Jeep's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

CLASS ACTION COMPLAINT

217.   The above-cited actions of Defendant was done with malice, fraud or oppression, and in conscious disregard of the Plaintiff's rights and with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages pursuant to California <u>Civil Code</u> § 3294 against Defendant in an amount sufficient to punish and deter others from engaging in similar conduct, which will be proven according to proof at time of trial.

**TENTH CAUSE OF ACTION**

**<u>BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY</u>**

**[<u>Commercial Code</u> § 2313]**

**(Against FCA U.S., LLC and DOES 1 through 100, Inclusive)**

218.   Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and incorporate by reference, as though fully set forth herein, the paragraphs previously alleged in this Complaint.

219.   Jeep is and was at all relevant times a merchant with respect to motor vehicles. <u>Commercial Code</u> § 2104.

220.   A warranty that the Class Vehicles were in merchantable condition is implied by law, pursuant to <u>Commercial Code</u> § 2314.

221.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

222.   Jeep was provided notice of these issues by numerous complaints filed against it, including this Complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiff and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

223.   Plaintiff and the other Class members have had sufficient direct dealings with either Jeep or its agents (dealerships) to establish privity of contract between Jeep, on the one hand, and Plaintiff and the other Class members, on the other hand.

Notwithstanding this, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Jeep and its dealers; specifically, they are the intended beneficiaries of Jeep's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the Warranty agreements provided with the Class Vehicles; the Warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff's and the other Class Members' Class Vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

224. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Jeep knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Jeep and Class members, and Jeep knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

225. As a direct and proximate result of Jeep's breach of the Warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

226. The above-cited actions of Defendant was done with malice, fraud or oppression, and in conscious disregard of the Plaintiff's rights and with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages pursuant to California Civil Code § 3294 against Defendant in an amount sufficient to punish and deter others from engaging in similar conduct, which will be proven according to proof at time of trial.

## ELEVENTH CAUSE OF ACTION
## FRAUD/FRAUDULENT CONCEALMENT
### (Against FCA U.S., LLC and DOES 1 through 100, Inclusive)

227. Plaintiff and the Members of the Class (and Plaintiff Classes) re-allege and

incorporate by reference, as though fully set forth herein, the paragraphs previously alleged
in this Complaint.

228.   Defendant concealed and suppressed material facts concerning the
performance and quality of the Class Vehicles – namely, the Defect – and the quality
of the Jeep brand. Specifically, Defendant knew of (or should have known of) the
Defect but failed to disclose it prior to or at the time it sold or leased Class Vehicles to
consumers. Defendant did so in order to boost sales and leases of Class Vehicles.

229.   Defendant had a duty to disclose the true performance of the Class
Vehicles and the Defect because knowledge thereof and the details related thereto were
known and/or accessible only to Defendant; Defendant had superior knowledge and
access to the facts; and Defendant knew the facts were not known to, or reasonably
discoverable, by Plaintiff and the Class. Defendant also had a duty to disclose because
they made many general affirmative representations about the about the qualities of the
Class Vehicles.

230.   On information and belief, Defendant still have not made full and
adequate disclosures, and continue to defraud consumers by concealing material
information regarding the Defect and the performance and quality of Class Vehicles.

231.   Plaintiff and the Class were unaware of these omitted material facts and
would not have acted as they did if they had known of the concealed and/or suppressed
facts, in that they would not have purchased or leased the Class Vehicles. Plaintiff's
and the Class' actions were justified. Defendant was in exclusive control of the
material facts and such facts were not known to the public, Plaintiff, or the Class.

232.   Plaintiff and the Class relied upon Defendant's representations and
omissions regarding the quality of Class Vehicles and the Defect in deciding to
purchase or lease Class Vehicles.

233.   Because of the concealment and/or suppression of the facts, Plaintiff and
the Class sustained damage because they did not receive the value of the premium
price paid for their Class Vehicles. Plaintiff and Class members would have paid less

for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

234.   Accordingly, Defendant is liable to Plaintiff and the California Sub-Class for damages in an amount to be proven at trial.

235.   Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages pursuant to California Civil Code § 3294 in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

236.   Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Jeep has profited and benefited from Plaintiff's and Class members' purchase of Class Vehicles containing the Defect. Jeep has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Jeep's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Jeep, and that a reasonable consumer would expect.

237.   Jeep has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties. Equity and good conscience militate against permitting Jeep to retain these profits and benefits, and Jeep should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## **PRAYER**

WHEREFORE, PLAINTIFF **DEMANDS A JURY TRIAL** and prays for judgment as follows:

### **ON THE FIRST CAUSE OF ACTION**:

(a)     For general damages according to proof;

(b)     For special damages according to proof;

(c)     For reasonable attorneys' fees and costs;

(d)     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)     For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE SECOND CAUSE OF ACTION:**

(a)     For general damages according to proof;

(b)     For special damages according to proof;

(c)     For reasonable attorneys' fees and costs;

(d)     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)     For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE THIRD CAUSE OF ACTION:**

(a)     For general damages according to proof;

(b)     For special damages according to proof;

(c)     For reasonable attorneys' fees and costs;

(d)     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a

-47-

reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)    For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE FOURTH CAUSE OF ACTION:**

(a)    For reasonable attorneys' fees and costs;

(b)    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

**ON THE FIFTH CAUSE OF ACTION**

(a)    For the equitable, injunctive and declaratory relief requested;

(b)    For treble damages;

(c)    For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify; and

(d)    For disgorgement of Defendant's profits.

**ON THE SIXTH CAUSE OF ACTION**

(a)    For general damages according to proof;

(b)    For special damages according to proof;

(c)    For reasonable attorneys' fees and costs;

(d)    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and

-48-

CLASS ACTION COMPLAINT

Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)    For an award of punitive damages pursuant to California <u>Civil Code</u> § 3294;

(f)    For an award of treble damages pursuant to California Civil Code § 3345 for every Class Member or sub-Class Member who is a senior citizen and/or a disabled person;

(g)    For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE SEVENTH CAUSE OF ACTION**

(a)    For general damages according to proof;

(b)    For special damages according to proof;

(c)    For reasonable attorneys' fees and costs;

(d)    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)    For an award of punitive damages pursuant to California <u>Civil Code</u> § 3294;

(f)    For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE EIGHTH CAUSE OF ACTION**

(a)    For general damages according to proof;

(b)    For special damages according to proof;

(c)    For reasonable attorneys' fees and costs;

CLASS ACTION COMPLAINT

(d)  Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)  For an award of punitive damages pursuant to California Civil Code § 3294;

(f)  For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE NINTH CAUSE OF ACTION**

(a)  For general damages according to proof;

(b)  For special damages according to proof;

(c)  For reasonable attorneys' fees and costs;

(d)  Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)  For an award of punitive damages pursuant to California Civil Code § 3294;

(f)  For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE TENTH CAUSE OF ACTION**

(a)  For general damages according to proof;

(b)  For special damages according to proof;

(c)  For reasonable attorneys' fees and costs;

CLASS ACTION COMPLAINT

(d)    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)    For an award of punitive damages pursuant to California Civil Code § 3294;

(f)    For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON THE ELEVENTH CAUSE OF ACTION**

(a)    For general damages according to proof;

(b)    For special damages according to proof;

(c)    For reasonable attorneys' fees and costs;

(d)    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Jeep to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(e)    For an award of punitive damages pursuant to California Civil Code § 3294;

(f)    For Certification of the Classes defined herein, or such other Classes and/or subclasses as the Court will certify.

**ON ALL CAUSES OF ACTION:**

(a)    For an award of reasonable attorneys' fees to Plaintiff and the Class Members pursuant to California Code of Civil Procedure § 1021.5, and/or other applicable law;

-51-

(b)     For an award of costs of suit to Plaintiff and the Class Members pursuant to applicable law; and

(c)     For such further relief as this Court may deem just and proper.

Dated: April 23, 2018                          **QUINTILONE & ASSOCIATES**

By: _____

RICHARD E. QUINTILONE II,
GEORGE A. ALOUPAS
Attorney for Plaintiff BRENNA MILMAN,
on behalf of herself and on behalf of a
Class of all other persons similarly situated

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of the claims by jury to the extent authorized by law.

Dated: April 23, 2018                          **QUINTILONE & ASSOCIATES**

By: _____

RICHARD E. QUINTILONE II,
GEORGE A. ALOUPAS
Attorney for Plaintiff BRENNA MILMAN,
on behalf of herself and on behalf of a
Class of all other persons similarly situated

CLASS ACTION COMPLAINT